## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BOLARINWA OKEZIE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD 13-168** |
| | ) | |
| **OFFICER NICHOLAS LEONARD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before this Court is Plaintiff's Motion for New Trial ("Plaintiff's Motion") (Docket Item No. 145). The Court has reviewed Plaintiff's Motion and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the following reasons, the Court hereby GRANTS Plaintiff's Motion.

### I.  Legal Standard for Obtaining a New Trial

Plaintiff seeks a new trial pursuant to Federal Rule 59, which states in pertinent part that "the court may, on motion, grant a new trial on all or some of the issues – and to any party . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Fourth Circuit law has articulated clearly that there are occasions where the court is required to do so. The law of the Fourth Circuit recently reaffirmed the requirement that district courts must set aside the verdict and grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  <u>Minter v Wells Fargo Bank, N.A .,</u>

762 F.3d 339, 346 (4th Cir. 2014) (citations omitted).  In this highly contested case, the Court

does not find that the "verdict is against the clear weight of the evidence," nor that it is "based

upon evidence which is false."  The only issue that could require a new trial is the question of a

"miscarriage of justice, even though there may be substantial evidence which would prevent the

direction of a verdict."

## II.  The Pretrial Stipulation

The salient issue raised by Plaintiff's Motion is framed around a pretrial stipulation

between the parties.  Defendants stipulated that "Plaintiff suffered a head injury as a

consequence of her arrest."  ECF No. 105, Pretrial Order, Stipulation 25, July 11, 2014.  At the

trial, Plaintiff presented evidence that she sustained a facial fracture and a head injury.  While at

times conceding that Plaintiff may have shown signs of physical injury, the defense strongly

denied that Plaintiff was "injured" in any meaningful way due to the alleged wrongful conduct of

Defendants.

While it could be argued that a facial fracture and a head injury on these facts are one in

the same, in viewing the stipulation in the light most favorable to the defense, the Court will not

consider Plaintiff's claimed facial fracture as being synonymous with a head injury.[1]  Similarly,

the Court will not consider a head injury to include a "brain injury" in this case, even though a

strong argument could be made.  Here, the Court will only consider argument or affirmative

evidence offered by the defense suggesting that Plaintiff did not suffer "any injury" or "any head

---

[1]      Plaintiff reminds the Court that Defendants were fully aware that the use of the phrase
"head injury" included Plaintiff's claim for a facial fracture.  See Plaintiff's Reply 8 (where
Plaintiff notes that Defendants in early motions indicated that "due to her resistance Plaintiff
suffered minor injury"); and Plaintiff's Reply 10-11 (where Plaintiff contends Defendants'
expert Dr. Michael Sellman stated Plaintiff suffered a "head injury as a consequence of her
arrest," and sustained a facial fracture.)

injury" as a consequence of her arrest, to be a clear violation of the stipulation.

As shaped above, the stipulation is stripped of any suggestion of ambiguity or lack of clarity.  The stipulation does not require any additional qualifications, such as "the manner or mechanism of injury" or even characterizations regarding fault, misconduct, or liability at the hand of Defendants.  The stipulation, in its essence, removes from discussion the question of "if" Plaintiff suffered a head injury, and left many questions for trial, such as: "who" is responsible for Plaintiff's head injury; "what" caused her head injury; "when" during the arrest was her head injured; "where" was her head injured; "how" was her head injured; and possibly "why" was her head injured?  With that said, the defense correctly argues that the stipulation is not an admission of liability.

### III.  The Closing Argument

The trial record reveals that defense counsel made a number of statements in his closing argument that are relevant to Plaintiff's Motion, as set forth below:

a) "This case is very simple.  It's about **whether** Ms. Okezie became injured."  ECF No. 145-3, Trial Tr.13:13-14, Aug. 18, 2014 (emphasis added).

b) "I will prove to you she was **not injured** on April 19th, 2011 at the hands of Officer Lucy Muse or Nicholas Leonard." ECF No. 145-3, Trial Tr. 14:1-3, Aug. 18, 2014 (emphasis added).

c) "Ms. Okezie never did that because she knew then that she had **no head injury** . . . ." ECF No. 145-3, Trial Tr. 23:12-13, Aug. 18, 2014, (emphasis added).

d) "They did not because Ms. Okezie had been **injured before April 19th, 2011**." ECF No. 145-3, Trial Tr. 24:3-4, Aug. 18, 2014 (emphasis added).

e) "Ms. Okezie **wasn't injured on April 19th, 2011**.  She was injured at some point prior in her life . . . She doesn't have any injury whatsoever."  ECF No. 145-3, Trial Tr. 26:21-24, Aug. 18, 2014  (emphasis added).

3

    f)   "No one took a photograph. . . . Could they have taken photographs of the injuries then? Certainly they could.  Take the cell phone out, take a photograph.  It would prove it."  ECF No. 145-3, Trial Tr. 29:8-10, Aug. 18, 2014.

    g)   "Well, it's not there because they knew if they had taken a photograph of Ms. Okezie that night, it would show, like the records show from the hospital, **there was no injury**.  It would be very telling evidence.  They failed to produce that evidence.  Could have done it.  Should have done it.  It would have proven the case."  ECF No. 145-3, Trial Tr. 29:14-20, Aug. 18, 2014 (emphasis added).

    h)   "We do have the medical records, and they give us an insight and picture into what happened on the 20th and also on the 19th.  They clearly show us that Ms. Okezie **was not injured whatsoever**."  ECF No. 145-3, Trial Tr. 30:14-17, Aug. 18, 2014 (emphasis added).

    i)   "Another question: If . . . Ms. Okezie were injured, why no one took any photos in her family?  **No one took a photo to show us that she was injured** on that day at that time."  ECF No. 145-3, Trial Tr. 32:1-4, Aug. 18, 2014  (emphasis added).[2]

The Court must now consider whether these statements were violative of the stipulation.  If so,

the Court must decide whether the appropriate remedy is to grant Plaintiff's Motion.

---

[2]     Defense counsel made a number of arguments in his closing asserting that Plaintiff did not have a facial fracture/eye injury or a traumatic brain injury.  The references to these arguments are set forth below.

    1)   The hospital records do not suggest an eye injury.  ECF No. 145-3, Trial Tr. 17:16-19:6, Aug. 18, 2014.
    2)   The hospital records do not suggest eye or brain injury.  ECF No. 145-3, Trial Tr. 20:3-7; 20:17-21, Aug. 18, 2014.
    3)   The absence of other medical records of care for a traumatic brain injury.  ECF No. 145-3, Trial Tr. 20:22 -21:3; 21:9-15; 31:4-10, Aug. 18, 2014.
    4)   The absence of adverse sequelae from a traumatic brain injury.  ECF No. 145-3, Trial Tr. 21:15-22:20; 23:12-14; 26:24-25, Aug. 18, 2014.
    5)   P's attempt to manufacture an eye injury.  ECF No. 145-3, Trial Tr. 24:12-14; 28:9-25, Aug. 18, 2014.
    6)   The absence of a brain injury.  ECF No. 145-3, Trial Tr. 26:22-23, Aug. 18, 2014.

Defense counsel's closing argument begins on page 13 of the transcript.  It ends on page 33.  If all references to facial injury, head injury and brain injury are deleted, there are only five pages of argument remaining.  In this pedestrian quantification, the issue of injury consumed 75% of the closing argument transcript.  These injuries, or the lack thereof, were of paramount concern to the defense.

### IV.  A Stipulation is Binding and Cannot be Withdrawn Without Consent

There can be no real dispute to the fact that a stipulation is binding upon the parties.  The
Minter court made clear that this circuit adheres to the conviction that a stipulation is a form of
judicial admission that cannot be modified or withdrawn without the express approval of the
court.  Minter, at 347.  In quoting the learned Professor Wigmore, our appellate court states that
a stipulation of "fact is thereafter to be taken for granted; so that the one party need offer no
evidence to prove it and the other is not allowed to disprove it."  Vander Linden v. Hodges, 193
F.3d 268, 279 (4th Cir. 1999).  If an advocate is prohibited from offering evidence to prove a
point, it follows that an advocate cannot make argument in the face of such a prohibition.  The
Court cannot allow an argument "through the back door," when the evidence which the argument
is based upon is denied admission "through the front door."  See also, Christian Legal Soc'y v.
Martinez, 561 U.S. 661, 676-77, 130 S. Ct. 2971, 2983 (2010).  The Court finds that the
stipulation, even when cast in the light most favorable to the defense, is "deliberate, clear and
unambiguous."  Fraternal Order of Police v. Prince George's County, MD., 608 F.3d 183, 190
(4th Cir. 2010) (citations omitted).  Accordingly, the defense cannot argue against it.

At the end of the day, Plaintiff properly believed the spirit and letter of the stipulation
would be enforced.  Plaintiff represents, and the strategic approaches of the parties leading up to
the trial confirm, that Plaintiff was prepared to present evidence on several levels in support of
her contention that she suffered a head injury as a consequence of her arrest.  In light of the
stipulation, Plaintiff elected not to present testimony to this issue, and in all likelihood would
have been precluded from doing so by the Court given the need to move the case along

expeditiously.  This tactical maneuver by the defense caused great prejudice, and is fundamentally unfair.

### V.  The Closing Argument Was All About the Lack of Injury

Statements by defense counsel that Plaintiff did not suffer a head injury as a consequence of her arrest, were not merely stray comments.  From the very beginning, the first substantive forays by counsel, amounted to a frontal assault on the question of "whether Ms. Okezie became injured."  This resounding theme did not subside until the close of counsel's argument.  The factual record here is a far cry from the passing singular comment that was not objected to during closing argument in <u>Minter</u>.  Giving credence, <u>vel non</u>, to the "isolated remark" at issue in <u>Minter</u> was a subject entirely within the discretion of the trial court.  <u>Minter</u>, at 15-17.  Here, the commentary weighs far more heavily than an "isolated remark."  The summary here goes to the core of the defense.  Moreover, in the present case, the parties reached an agreement in advance of trial and with the imprimatur of the Court.  The Court did not permit the stipulation to be withdrawn.  To countenance the breadth and scope of these statements, would be decidedly unfair.

Interestingly, in its opposition to Plaintiff's Motion, the defense now suggests that Plaintiff did in fact suffer a head injury.  It states,

> [D]uring trial, Officer Leonard testified that Plaintiff fell to the ground as she resisted being arrested. . . Having heard this testimony, which was not objected to, the jury was free to infer that Plaintiff could have obtained her 'head injury' when she fell, as a consequence of her own resistance."

Defs.' Opp'n 9-10.  The premise is correct, as well as the following point that defense counsel "was also then free to argue this inference during closing."  Id.  But to argue that Plaintiff had "no injury" is not the same as arguing that her injury was self-inflicted.

### VI.  Plaintiff's Objection Was Isolated and Misplaced

Plaintiff's sole objection to the presentation of evidence offered in violation of the stipulation, was heard only when Plaintiff was attempting to obtain an admission from Defendant Leonard on cross-examination.  Plaintiff suggests error occurred when the Court refused to require Defendant Leonard to testify consistently with the stipulation.  During the bench conference regarding Plaintiff's objection, the Court made clear that while the stipulation is controlling, the party's testimony under oath is not compelled.  The Court's view would be entirely different if the testimony was sought by the defense in its direct examination.  There, an affirmative attempt by the defense to undermine the stipulation would be objectionable and rightfully stricken from the record.  Moreover, if requested, it is likely the jurors would have been advised by the Court of the stipulation between the parties for the purpose of curing the inadmissible testimony.  To do otherwise, would be to allow the defense to "undermine the value in litigation of pretrial stipulations."  Bistro of Kansas City, Mo., L.L.C. v. Kansas City Live Block 125 Retail, L.L.C., No. ELH-10-2726, 2013 WL 4431292, at *21 (D. Md. Aug. 16, 2013).  It was not necessary for Plaintiff to elicit the stipulation from Defendant Leonard.  Plaintiff was free to advise the jurors directly by merely reading the stipulation into the record.  To the extent Plaintiff suffered prejudice in her cross-examination of Defendant Leonard, it was of Plaintiff's own making.

7

The defense correctly notes that the testimony at trial was replete with references by certain witnesses to events that would not support a claim that Plaintiff suffered certain injuries in their presence.  ECF No. 159-8, Trial Tr. 16:9-17:23, Aug. 15, 2014 (testimony of Danielle Underwood); ECF No. 159-8, Trial Tr. 9:24-10:9, Aug. 15, 2014 (testimony of Tiana Smith); ECF No. 159-8, Trial Tr. 18:6-25, Aug. 15, 2014 (testimony of Savanie Wilson).  Plaintiff is also correct in noting that there was no need for an objection to the testimony to be offered by these witnesses, in light of the belief that these witnesses merely testified to not seeing an injury.  See Pl.'s Reply 6.  Such statements are at least one step short of contending that Plaintiff was "not injured."  Nonetheless, in the face of a stipulation that Plaintiff suffered a head injury, Plaintiff was not required to and may have been precluded from presenting direct evidence on the issue.

The Court does not agree with the defense that because it was able to present said evidence without objection, it "was then at liberty to argue all reasonable inferences to be drawn from their testimony – including, that Plaintiff did not sustain any form of head injury while being arrested."  Defs.' Opp'n 8-9.  As stated earlier, a stipulation cannot be withdrawn or modified without the consent of the Court.  Minter, at 347.  The Court never made such a ruling, and under these circumstances, will not agree to do so.

### VII.  The Effect of Plaintiff's Failure to Make Timely Objections

On this record, the Court is not persuaded that Plaintiff's argument fails merely because she failed to make timely objections to the presentations of evidence or to the closing argument of defense counsel.  Similarly, the Court is not of the view that Plaintiff needed to pursue a motion in limine in order to protect the stipulation.  While the Court will grant Plaintiff's Motion, there is a consequence.  Namely, Plaintiff will not have the benefit of the continuation of

this stipulation at the retrial.  Plaintiff's failure to protect the stipulation, means that the stipulation vanishes through Plaintiff's inaction.  If the defense is unwilling to stipulate again, the Court will not require the defense to do so.  If Plaintiff attempted to protect the stipulation, the Court would be of the view that Plaintiff was deprived of the benefit through no fault of her own. The Court does not find Plaintiff's explanation for failing to do so persuasive.[3]  Here however, Plaintiff could have prevented much of the testimony and all of the egregious commentary of the defense closing by being more vigilant.  Accordingly, the Court will schedule a new pre-trial conference to prepare for the retrial of this matter.  The parties will not be bound by any of the stipulations on evidence previously entered.  It is the hope of the Court, that the parties will still work collaboratively to the effect of eliminating duplicity, simplifying the issues in contention, and to otherwise work as efficiently as justice will allow.

The balance of Plaintiff's argument provides no basis for a new trial.  Including, defense counsel's alleged misrepresentation of the factual record.  Jurors are instructed that their recollections and determinations of the facts are controlling.  Likewise, defense counsel's improper remarks implying that Plaintiff was the victim of domestic violence were objected to, and sustained by the Court.  ECF No. 145-3, Trial Tr. 33:15-21.  Plaintiff did not seek further relief at that time by way of seeking a more curative instruction or a mistrial.  The Court does not find that there was improper vouching for or attacks upon the credibility of various witnesses. See Walker v. State, 373 Md. 360, 818 A.2d 1078 (2003).  The other claims of counsel misconduct, even if true, were not met with an objection.  These claims do not rise to the level of

---

[3]      Plaintiff contends that the Court's ruling that Defendant Leonard was free to speak against the stipulation cleared the way for the defense to speak forcefully on the issue in closing. Pl.'s Reply 8.  This is a non-sequitur. The Court advised the parties that the witness was allowed to do so because his view was elicited in cross-examination.

creating a "miscarriage of justice" as envisioned by the drafters of Fed. R. Civ. P. 59.  Even

assuming, _arguendo_, that the Court was in error in allowing the presentation of evidence or

improper arguments of counsel, such error would be "harmless" under Fed. R. Civ. P. 61.

## VIII.   Conclusion

The Court finds that the strong arguments of defense counsel were not appropriate in

light of the stipulation between the parties.  Given the clear language of the stipulation, it would

be a miscarriage of justice to allow the jury verdict to stand.  Accordingly, the Court GRANTS

Plaintiff's Motion for New Trial.

The Court will enter a separate Order consistent with this opinion.


December 15, 2015                                        _____/s/_____
                                                        Charles B. Day
                                                        United States Magistrate Judge


CBD/bab

10